## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

         Plaintiff,

    vs.                         **Case No. 04-40100-01-RDR**

GREGORY LEE GABALDON,

         Defendant.

_____

### MEMORANDUM AND ORDER

The defendant is charged with possession with intent to distribute 213 pounds of marijuana in violation of 21 U.S.C. § 841(a)(1). The charge arises out of a traffic stop on Interstate 70 in Russell County, Kansas on July 27, 2004. The defendant has filed a motion to suppress. In the motion, he contends he was illegally seized because the stop extended beyond its original purpose without consent or reasonable suspicion. The court has conducted a hearing on the motion and is now prepared to rule.

FINDINGS OF FACT

1. On July 27, 2004, at approximately 8:03 a.m., Russell County Deputy Sheriff Kelly Schneider was in his patrol car and was sitting in the median of Interstate 70. He observed a Chevrolet Blazer traveling eastbound come out of a construction area and cross the white outer line of the roadway on two occasions. The roadway was straight where the Blazer traveled

outside the lanes.  The weather was sunny with a slight breeze.
Deputy Schneider decided to stop the vehicle for failure to
maintain a single lane of travel.  Deputy Schneider had been
patrolling and doing drug interdiction on I-70 since 1999.  He
has received considerable interdiction training during his
employment as a deputy sheriff.

2.  Deputy Schneider stopped the Blazer at approximately
8:05 a.m.  The driver was the defendant, Gregory Lee Gabaldon.
The vehicle also contained a female passenger.  The encounter
was videotaped by a camera mounted in Deputy Schneider's car.
The camera also had audio, but the conversations were somewhat
obscured by traffic and wind noise.

3.  As the defendant stepped from his vehicle, Deputy
Schneider said:  "Morning, how you doing?  Are you awake?  You
were running over the white line on me.  I wanted to make sure
you were awake."  Deputy Schneider asked for the defendant's
license and registration.  He also asked the defendant where he
was from and to where he was traveling.  The defendant provided
his license and registration.  He told Deputy Schneider that he
was from Scottsdale, Arizona and that he was traveling to
Chicago on vacation.  He said he was going to a friend's
birthday party.  Deputy Schneider noticed several containers in
the back of the Blazer, one of which was a cooler that appeared

to be sealed with silicone.  He also thought the defendant appeared nervous.  He did not, however, smell any odors of illegal drugs or any masking odors.  At 8:07 a.m., Deputy Schneider returned to his car with the defendant's driver's license and registration.  Deputy Schneider requested the dispatcher check the defendant's license, registration and criminal history.

4.  The information from the dispatcher was slow in coming due to computer problems.  While waiting for the dispatcher to respond, Deputy Schneider wrote a warning ticket for failure to maintain a single lane.  Deputy Schneider finally got out of his car at 8:13 a.m.  The defendant also got out of his vehicle at that time.  Just as Deputy Schneider was approaching the defendant, he received the requested information from the dispatcher.  Deputy Schneider directed the defendant to wait at the rear of the Blazer.  Deputy Schneider returned to his vehicle where the dispatcher confirmed the validity of the license and registration.  The dispatcher also informed Deputy Schneider that the defendant had a criminal history, but the nature of the history was not ascertained at that time.

5.  Deputy Schneider again approached the defendant at 8:15 a.m.  Deputy Schneider gave the defendant the warning ticket and his license and registration.  At that time, Deputy Schneider

was suspicious of the defendant based upon the following matters: (1) the defendant was traveling from a known drug source area; (2) the defendant was traveling to a known drug destination; (3) I-70 is a known corridor for the transportation of illegal drugs; (4) the defendant's explanation of the reason for his trip did not seem credible; (5) the defendant's appeared nervous; (6) he observed a number of containers in the back of the Blazer; and (7) the presence of silicone to seal a cooler appeared to be a method to mask the odor of the items contained in the cooler.

6. After Deputy Schneider gave the defendant the warning ticket and his license and registration, the following conversation occurred in the area between the defendant's vehicle and Deputy Schneider's patrol car:

> Deputy Schneider:  Be careful.
> Defendant:  Thank you.
> Deputy Schneider:  Drive safely.  Hey, you mind if I ask you another question?
> Defendant:  What?
> Deputy Schneider:  Mind if I ask you another question?
> Defendant:  What's that?
> Deputy Schneider:  We have a lot of illegal contraband up and down this road and illegal weapons.  You don't have anything like that?
> Defendant:  No.
> Deputy Schneider:  Mind if I take a look in your car?
> Defendant:  Yeah, I do.
> Deputy Schneider:  Why?
> Defendant:  [unintelligible]
> Deputy Schneider:  How about I run a dog around the vehicle?
> Defendant:  What?
> Deputy Schneider:  How about I run a dog around the vehicle?

            Defendant:  Around the vehicle?
            Deputy Schneider:  Yeah.  You don't mind?
            Defendant:  No.

    7.  During the aforementioned encounter, Deputy Schneider used a conversational tone of voice.  He did not raise his voice or command or instruct the defendant.  He did not draw or touch his gun.

    8.  Deputy Schneider then directed the defendant and his female companion to stand in the front of the Blazer.  Deputy Schneider obtained his drug dog, Andor, from his car and ran him around the Blazer.  Andor alerted to the vehicle.  Deputy Schneider searched the vehicle and found 44 packages of marijuana weighing approximately 213 pounds.  The defendant was then arrested.

CONCLUSIONS OF LAW

    1.  The defendant contends that Deputy Schneider illegally extended the stop by asking further questions and preventing him from entering his vehicle to leave.  He suggests that the questions posed by the officer were the functional equivalent of an order to remain.  Thus, he suggests that he was detained without the requisite reasonable suspicion or consent.  He further argues, relying upon a decision of the Illinois Supreme Court, that the use of the dog to search the outside of his vehicle was unreasonable under the Fourth Amendment.

2.   The government argues this was a consensual encounter after Deputy Schneider returned the defendant's license and registration.  The government suggests the circumstances do not show that a seizure occurred.  The government further contends that, even if this were not deemed a consensual encounter, there was reasonable suspicion for the continued detention.  The government points to (1) the defendant's criminal record; (2) the defendant's nervousness; and (3) the coolers in the car, one of which was sealed with the use of silicone.  Finally, the government suggests that the defendant's reliance upon the Illinois decision is misplaced since the Tenth Circuit has ruled to the contrary.

3.   A traffic stop constitutes a "seizure" within the meaning of the Fourth Amendment and is therefore subject to the "reasonableness" requirement.  See Delaware v. Prouse, 440 U.S. 648, 653 (1979).  This requirement is met if the officer has either probable cause to believe that a traffic violation was committed by the motorist, or a reasonable articulable suspicion that the driver violated the jurisdiction's traffic regulations.  See United States v. Ozbirn, 189 F.3d 1194, 1197 (10th Cir. 1999).  There is no dispute that the initial stop was proper.  The defendant has made no arguments that he was illegally stopped.

4.  The court must next consider whether the entire stop was reasonable.  Thus, we must determine "whether it was reasonably related in scope to the circumstances which justified the interference in the first place."  <u>United States v. Holt</u>, 264 F.3d 1215, 1220 (10th Cir. 2001) (en banc) (quoting <u>Terry v. Ohio</u>, 392 U.S. 1, 20 (1968)).  "When a driver has produced a valid license and proof of entitlement to operate the vehicle, an officer may issue a citation, but then usually must allow the driver to proceed without further delay or questioning."  <u>United States v. Patten</u>, 183 F.3d 1190, 1193 (10th Cir. 1999).  Two established exceptions to this general rule permit further questioning if "(1) the officer has an objectively reasonable and articulable suspicion that the driver is engaged in illegal activity, or (2) the driver voluntarily consents to further questioning."  <u>Id</u>.

5.  When a defendant alleges he did not voluntarily consent to additional questioning, the government bears the burden of proving that consent was in fact voluntary.  <u>United States v. Sanchez-Valderuten</u>, 11 F.3d 985, 990 (10th Cir. 1993).  Whether consent is freely and voluntarily given is a question of fact determined from the totality of the circumstances.  <u>United States v. Pena</u>, 143 F.3d 1363, 1366 (10th Cir. 1998).  The government must show the consent was unequivocal, specific, and

7

freely given without duress or coercion.  United States v.
Angulo-Fernandez, 53 F.3d 1177, 1180 (10th Cir. 1995).

6.  The court believes the totality of the circumstances
show that the defendant voluntarily consented to further
questioning.  The court finds no evidence of coercion by Deputy
Schneider.  Deputy Schneider indicated to the defendant that he
was free to go when he told him, "Be careful."  The defendant
displayed a willingness to answer the questions posed by Deputy
Schneider.  He gave no indication that he did not wish to engage
in a conversation with Deputy Schneider.  The court finds that
the defendant voluntarily consented to answer the questions
posed by Deputy Schneider and that he voluntarily consented to
a drug dog sniff of his vehicle.  Given these conclusions, the
court finds it unnecessary to decide if reasonable suspicion
existed for the continued detention of the defendant.

7.  Finally, we need to consider the defendant's argument
concerning the drug dog sniff.  The defendant contends that the
Illinois Supreme Court's decision in People v. Caballes, 802
N.E.2d 202 (2003), cert. granted, 2004 WL 717187 (2004)
indicates that Deputy Schneider's use of the drug dog was
improper.  In Caballes, the defendant was stopped for speeding.
The officer "noticed an atlas on the front seat, an open
ashtray, the smell of air freshener, and two suits hanging in

the back seat without any other visible luggage." Cabelles, 802 N.E.2d at 203.   The officer asked for consent to search the vehicle, which was refused.   Id.   Although Caballes stated he had not been arrested in the past, dispatch reported he had two prior arrests for distribution of marijuana.   Id.   While the officer was writing a warning ticket, a canine officer arrived and walked his dog around Caballes' car.   Id.   Based on the dog's alert, the trunk was searched and marijuana was discovered.   Id.

The Illinois Supreme Court held that the use of the drug dog "impressibly broadened the scope of the traffic stop in this case into a drug investigation because there were no specific and articulable facts to support the use of a canine sniff." 802 N.E.2d at 204.   The observations noted by the officer were insufficient to support a canine sniff.   Id. at 204-05.

8.   The facts here are quite different from those in Caballes.   Here, the defendant specifically consented to the use of the drug dog.   The defendant was asked about the use of the drug dog prior to its use, and he agreed to it.   Even without the consent, the state of the law on the use of drug dogs in the Tenth Circuit is different than in Illinois.   In United States v. Morales-Zamora, 914 F.2d 200, 203 (10th Cir. 1990), the Tenth Circuit held the police did not need individualized suspicion of

drug-related activity before subjecting an otherwise lawfully detained vehicle to a canine sniff.  The Court determined that a canine sniff was not a search under the Fourth Amendment.  <u>Id</u>.

9.  In sum, the court shall deny defendant's motion to suppress.

**IT IS THEREFORE ORDERED** that defendant's motion to suppress (Doc. # 13) be hereby denied.

**IT IS SO ORDERED.**

Dated this 7th day of January, 2005 at Topeka, Kansas.

s/Richard D. Rogers
United States District Judge